Our first case is Marnarsky, Counselor? I've never seen a torn meniscus. Oh my goodness. And when you did the dunk, did you come down fully? That's my joke, that's my joke. Okay, listen, I'll believe it. Is it cooler? May it please the court, good morning panel. My name is David Kohler on behalf of the appellant, Sherry Marnarsky. And Mr. Kohler, would you like to reserve some time? If I may reserve three minutes for rebuttal. Very well, go ahead sir. Thank you. May it please the court, your honor, I have the pleasure of representing Sherry Marnarsky. I want to, I'll give you the overall issue. We've submitted to the court that the trial court erred in finding that the county met its burden of proving the Farragher-Ellert affirmative defense as a matter of law. The application of the defense relies on an evaluation of whether both parties acted reasonably. There's the issue of whether the employer acted reasonably, or exercised reasonable care to prevent harassment, and whether the employee acted unreasonably in failing to take advantage of the employer's safeguards. Okay, so here's the question I have, okay. So we asked you to, first of all, I just want to make sure we didn't miss something. There was the opportunity to submit something on the reasonableness issue, and I didn't see anything from you. Did we miss that? No. Okay, very good. Just want to make sure. Sure. So here's the question I have for you on the reasonableness. I look at certain facts, and I say, where should those facts lead us? So here are a few of them. This went on for the better part of four years, probably between three and a half and four years as I understand the record. Yet in the e-mail that happened towards the end, Ms. Minarski says, I don't want to go to Sylvia, who's the clerk. I want to try to resolve it ourselves. We know that Ms. Minarski is a member of the union. We know from the deposition that she knew what the process was. She knew where to go. As far as the record goes, and you'll correct me if I'm wrong, she did over this period of time receive some raises. She kept her job. There was no demotion. So I'm wondering what are the facts, given those facts, what are the facts that I should look at so that the futility argument, I call it the futility argument, nobody else calls it that, but that's essentially what we're talking about, so that the futility argument works for you, so that we don't look at the record and say it's a three and a half year delay. It's unreasonable. A couple of facts, Your Honor. Number one, Minarski directly reported to Yudlowsky. He was her supervisor. This is a part-time job. She worked Monday, Wednesdays, and Fridays. He would work with her alone in the office on Fridays. So Speemer and Warren were his supervisors. They were the folks who were charged with enforcing the county's harassment policy. That's fact number two. I have to put the pieces of the puzzle together. I'm arguing that the policy was ineffective and a sham. Most large companies have policies. Those of us who practice employment law know that. But this policy was ineffective at stopping harassment, and Minarski, my client, knew that. Does that suggest that there should be a different policy or that this one was okay but wasn't enforced? The latter, Your Honor. So when you say a sham, you don't mean the policy itself was bad? I mean, if that's how you interpret it, what I mean is that they had a policy. It was ineffective. It didn't work. Because she knew that he had been warned twice and no one did anything. Exactly. But the no ones that did anything, Your Honor, are the county commissioner and the chief clerk of the court, one of whom testified that Yadlovski, the harasser, was harassing her. That was after the fact. She didn't know while she was going through this period that anyone in authority had been harassed by him, did she? She didn't know that. Rachel Cornico. Right. Exactly. She knew of one of two prior incidents. What came out in discovery is that. . . And she knew that other people had said, you're not supposed to be doing this. There were a lot of things where people were looking the other way. Yes, she witnessed that, and she knew that he would say, I can do it over in that building, or I can't do it over in that building, but I can do it here. To get back to the other facts, it would be Beamer or Warren, the county commissioner and the clerk at the time, who should have received the report. The fifth fact is that there's no dispute that the sexual harassment occurred. She actually said at one point that she didn't want to bring it to Beamer's attention. Did she not write to Yadlovski and say she preferred not to bring it to Beamer's attention? She wanted to settle this between the two of them. She did. I'll get back to the facts, but I want to point to address your honors. At that position, she was asked, did anything unusual happen on July 10th that caused you to write Mr. Yadlovski an email about this? And she said, at first, not on the 10th, probably a week or two earlier, I had been struggling with it for a lot of years. It was very hard to continue working there, but I needed the job and the money and didn't want to let my family down. I continued. Like I said, it was one day a week. So she's stressing that she had a part-time job one day a week. I'll just read on. At first, I tried to tell myself, this is one day a week. I'll try to deal with it. I need the job. Eventually, it started to get worse. It started to be harder on my health. Emotionally, it was too much. He was getting worse. As the time passed, he was doing more and more, which was making it harder. Anyway, she then testifies how she went to her doctor in April. Remember, the email was in July. At some point, I want to say in April, I had some health issues, and I had seen my doctor. During my visit with my doctor, she brought up the issues I was having was due to stress. She wanted to know what stress I had. Why am I having all this stress? I said, work. She said, what do you mean work? Your job shouldn't be that stressful. I said, you know, problems with the boss. Again, she questioned that. What do you mean problems with the boss? Next thing I knew, I was in tears telling her the whole thing. She sat with me and talked with me. Had I spoke up to him? Had I told him no? Who had I told? She herself said I needed to inform him not to do this no more. He needs to know that. She's the one that mentioned. Why don't you email him? We all read this, and no one's making the argument or thinking that this is conduct that is other than unbecoming, right? This is not conduct that someone should have to deal with at work.  So the question that I've asked and Jeff Fortes has asked is, if she acknowledges that she knew where to go, and she's a member of a union, so she's not going to be fired if she reports something, and at least as far as we know, you'll tell me if I'm wrong,  That's correct. She will lose her job. She loses raises. She wasn't demoted. Then how does she satisfy this reasonableness issue that we've asked you to speak to? Because the county in its submission essentially makes the argument, look, the policy that was in place, it is what it is. But if you take a look at these facts, she had the opportunity to report it. She knew where to go, and she specifically chose not to. So while I, as a person, feel for her in that situation, I'm just trying to deal with it as is it reasonable, unreasonable. Sure. I'd love to hit the grand slam in this case, but I think I only have to hit the home run. It's a question for the jury. When you look at this evidence and you see what she was going through, I frankly, to be candid with the court, the case law on this needs to change. It's too simplistic. I've had opinions that say that a subjective fear of retaliation is nonsense, and that might be a direct quote as I was preparing for this oral argument. The courts have been too dismissive up to this point in time, and we've learned some things over the past year and a half. People actually fear retaliation in the workplace. They fear reporting. What I just read to you about Sharon Minarchy's testimony is what happens in real life in the workplace. It sounds like there's no point in having a policy because all you have to say is, I'm afraid of reporting it. That's the simplistic view that needs to change in light of everything that's come out recently. I'm not saying that the Farragher-Ellis defense needs to be eroded like the defendants are arguing. Frankly, I don't think I have to answer Your Honor's question respectfully. I think I have to say that it's an issue of fact. Let the jury decide whether this was reasonable or not, depending upon the facts. Exactly. You can't say as a matter of law that this was unreasonable. To hit the green slam, I'd like the court to seize this opportunity to perhaps hold that in all situations, this should be a question for the jury to consider whether it's reasonable to withhold your feel. I really think psychologists who Well, there has to be enough there. Well, so I'm not going for the green slam. What I will acknowledge is if there's nothing there more than a fear of retaliation and then she reports it and she gets fired, then A credible fear. Exactly. And maybe that's where the jury should observe the witness as well. What's a credible fear if you're a union member and nothing's in three and a half years happened to you? Well, it goes back to your initial question. Well, the nothing that has happened in three and a half years, I would just urge you to No, no. I mean, I'm not demeaning what happened. Right. That's not the issue. Right. I mean, we are in the tangible employment action or whatever phraseology you want to use, adverse employment action. I mean, if that hasn't happened, then what's the fact that we latch on to? Because you want us to give life to this notion of a futility defense. Right. That's what this is all about. I want the court to recognize that victims of harassment sometimes are more likely not to report it. And psychologists would probably, I mean, I think they would read the case law and cringe and shudder because it might suggest that it was more likely that it happened. And I think that it's a question of fact for the jury if you have some type of evidence like I have here with what happened with Sherry. Can you look at it from the other side also? I can. We have a policy. We don't like these types of cases. We don't like sexual harassment. We don't want our employees to be sexually harassed. So we have a policy. Please report any such incident to your supervisor, report it to somebody that is in a position of responsibility. As a matter of fact, once that happened, the county did fire him. So it seemed to work in that sense. What have you got to say about that? She was so afraid, so intimidated. I mean, based on some of the things that he talked about, which I pointed out, some of the facts, to get back to your initial question, some of the implied threats. I mean, a jury deserves to look at his comment about what he said about Warren and Beamer and gets to analyze that. I also think, Your Honor, you talk a lot about the policy, and I do see it from that point. But if you have a zero-tolerance policy, you have to have zero tolerance. This guy was kissing people on the lips, and he said it was okay, and they never disciplined him. And she knew at least some of that, and he had done it in the past. And more significantly, the people who enforced the policy knew about that. So I think if you have a zero-tolerance policy, you can't let this stuff happen, and then so that gives her pause in addition to the natural feelings that victims of harassment in the workplace face. I'm out of time. Okay, thank you. Thank you very much. Counsel.  Yes, may it please the Court. My name is Dana Zlotuha, and I'm here representing Susquehanna County. I'd like to start by responding to counsel for the appellant's argument that Ms. Minarski could not report because of her subjective fears. You said you have a policy that's effective. I'm sorry, what? You said you have a policy that's effective. We do. Let me ask you the follow-up. If the policy was so effective, how do you get away with it for so long? Well, from the county's perspective, they have a policy that allows a report to a supervisor or when the harasser is the supervisor, either to the chief clerk or the county commissioners. But no one reported. He was doing things left and right, and no one reported, and people in authority just looked the other way. He was kissing people under the mistletoe. He was doing all this. Surely no one was saying, oh, this is something contrary to the company. Well, as far as the county is aware, there were only two instances where there had been previous reports, and both times Mr. Yadlowski had been disciplined. He had been warned. Well, he had been verbally disciplined, which was a verbal warning. There was nothing written, but it was discipline, warning, an admonishment that was not acceptable. Okay, not acceptable. So just, you know, give him a slap on the hand. I mean, unacceptable is unacceptable. It means that something happens to you as compared to a slap on the hand. Well, I think it's also important to take into account the factual context. In both of those situations, either the chief clerk or a county commissioner had witnessed Mr. Yadlowski hugging a female employee. When either the chief clerk or the county commissioner approached Mr. Yadlowski to admonish him about it, in both instances the women stated that they did not feel that it was offensive conduct and they did not want to make a report. They both said, I didn't think anything of it. But then don't you ask people who were under his, who he's supervising, don't you at least interview them, see if it's happening? He's alone with this woman on Fridays. And don't you at least investigate it and find out what's going on? I mean, he was fired within a nanosecond of this, of her reporting this. They knew, and Beamer knew what was going on. The record, the facts in the record show that other than those instances, there had been no reports to the county. Yeah, no reports. But isn't that a problem, that the policy is not effective? We can see from the record that this is happening, and there's no reports. So is the policy effective? Well, from the county's perspective, the policy was working because the only times that an issue had come up, he had been disciplined. What if he was? I mean, Beamer was hugged like ten times by this man, and she's the person to whom you're supposed to report? Well, I believe you're referring to Commissioner Warren, not Sergeant Beamer. The allegations concerning Commissioner Warren, as Judge Greenway referenced, had occurred later in time. And again, Ms. Minarski is working there for four years. She never has any cause to complain, as far as the county knows. And every time the county was aware of something, the county had taken action. Why isn't she excused from having to report based on the things that Yadlovsky said to her? It seems clear that there's more than an inference that he is letting her know, if you report, things are not going to go well. Now, in that particular circumstance, why doesn't that essentially show futility and shows that her not reporting is, in fact, reasonable? Well, because all the facts in this case support the fact that there was never any reference by any county official that would discourage her from making a report. We only have the direction that's right. That's not Judge Greenway's question. His question is, he said, don't trust these people. He said, Beamer knows, and he joked about it. He said, you know, things will happen to you. He was nasty when she wasn't complicit with him. She knew he had been wrong twice, and he was getting away with it. Why doesn't this excuse her? Well, because, again, the only person who's telling her this is her harasser. Yeah, but he's her supervisor. You can't persist in that argument, right? I mean, if you work for me and I say to you, if you go to Judge Fuentes, terrible things are going to happen to you and your family. I mean, unless you thought I was a joke, right, you wouldn't go to him, right? Yes. I wouldn't go to my harasser to report, but that's why the policy has reporting mechanisms. Wait, did you listen to my hypothetical? No, I'm sorry, Your Honor, I'm not understanding the question. If you worked for me, right, and I told you, if you report any of the terrible things, right, he's my guy, you know, he's not going to help you. She's complicit with me, too. Wouldn't that prevent you from reporting to them if I told you that? I suppose if, I mean, those aren't the facts of record. If you are to assume that everyone is complicit and there's no one to report to, I would argue that that's unreasonable in the modern-day employment situation where you have a policy in effect and the fact are that when there had been reports, the county had acted, that it's unreasonable to take the harasser's word at face value when there is evidence that the county has acted to remedy that. In your view, what should she have reported to whom? Well, she had the option to report to the chief clerk as Sylvia Beamer. Sylvia Beamer herself had been harassed and nothing was done. No, I believe you mean that Commissioner Warren had been approached. Sylvia Beamer, I don't believe there are any facts of record to show that she had been harassed. Sylvia Beamer had him in her office and warned him not to do that. He basically came back to the county office building and joked about it, about it with the other officers, and that's how she knew this had happened. So he came and it was a joke. I'm sorry, I thought you said that Ms. Beamer had been harassed herself and I was saying she had not. I will stand corrected. Warren was harassed. She's one of the commissioners, isn't she? She is a commissioner. And nothing was done. Well, again, Ms. Warren testified to the fact that she did not view the situation as a fireable offense. And the case law is clear that the reprimand can fit the severity of the action. In the Jones case, for instance, an opinion of this court from 2015, the court said the fact that the harasser was only given a slap on the wrist, further discipline was not required to prove that the employer's remedial action was adequate. Indeed, a light punishment may have been suitable in view of the finding that there was only... Put aside remedial punishment, right? The point that I'm trying to delve into with you is, doesn't this circumstance create genuine disputes of material fact that should not be resolved? You may not credit, you may try to undermine Ms. Minarski's statements about what she took Mr. Yadlovski to mean when he made statements to her about essentially the futility of reporting. But the fact is, that's in the record. These other facts that I've alluded to when I was questioning your colleague are in the record. So doesn't that create a circumstance where there's a genuine dispute and you, as a consequence, go to trial and not grant summary judgment? I don't think it creates an issue of fact because the facts themselves are not in dispute. But you're saying that we have a question of reasonableness. Yes. And you are contending that this was unreasonable as a matter of law. Yes. Could reasonable minds not differ as to whether this was unreasonable as a matter of law? Well, I think the fact that she never reported the policy in view of the fact that she knew she could report. You think, could a reasonable person credit her argument if she testifies to this and credit it that she was acting reasonably in view of the facts of record? Respectfully, I don't think so. I don't think it creates an issue of fact because the case law is such that it is the employee's onus to report that these policies are not self-enforcing. The county enacts policies, the employees have to make a report. If the county doesn't know that anything is going on, what kind of standard can we place the employer in to say that we have to investigate every situation? Do you believe, and I think we have a situation here where the last eight months or year has informed our thinking as to reporting where the person that you're going to report on is in a position of authority. Do you not think that a reasonable juror in this day and age could look at her plight and the fact that, I mean, she didn't want to tell her husband, she told her husband, he said quit, she says I can't lose my job. Do you not think that a reasonable juror hearing what she is going through could say, you know what, if I were in that situation, I might not have reported also? I think it is a very difficult situation that the world is trying to deal with. I also think it's extremely important to keep in mind that as the person who is suffering the abuse, we have a duty to act and to say something and to not let a situation happen. And to let it happen for four years when your employer doesn't know the problem you're having, it's unreasonable objectively for her to expect help when she has not, not only not asked for help, but hidden the situation from the county. If a victim doesn't report, but a supervisor is fully aware of sexual harassment, is there not a responsibility on the part of supervisors to say something? Well, I don't believe the facts in this situation show that the county officials were aware that Ms. Minarski was being harassed. There's no evidence of that. Peter was aware, wasn't she? There's no evidence that anyone was aware of Ms. Minarski's situation. Let's assume there's no evidence that anyone is aware, okay? And alluding to what Judge Rendell was talking to, obviously the MeToo movement, when a supervisor, I just want to sort of take a step and then walk back to what we have here. You would agree that if a supervisor threatened a subordinate that if you don't comply with my requests, bad things are going to happen, that it would not be in that circumstance unreasonable for the person, based on those threats, not to report. You'd agree with that? That sounds plausible. I'm sorry. We don't have those facts. It's hard to speculate as to an answer. That's why you have hypotheticals. Walk with me, please. You would agree with that, yes? If someone were being directly physically threatened, I could see that they'd be hesitant to report. The way he always made me fear Sylvia and the commissioners, to me, this was going to be the end of my job. Okay, so you put in physical, I didn't, physical threaten. Yes, you agree. Now, with what Judge Wendell has just read to you, why is it different? Why is the result different? Because those assertions aren't at all supported by the facts. For her to believe something someone's telling her when the situation she can see around her is different, I think that makes that objectively unreasonable. She knows that he has been disciplined, so that shows that the county does discipline in certain situations. What she says happens. You've been admonished at best. Disciplined, I would hesitate to employ, but go ahead. Would you like me to continue? I ran out of time, quit some time ago. You did. I don't want you to continue. I want you to finish your last thought, unless my colleagues have more questions. Well, essentially, again, the bottom line is the county was unaware that she was facing harassment for the only basis she had not to report is her supervisor saying, you better not report because they might eliminate your job, is not a physical threat, is not something that would prevent her from reporting harassment by the harasser when he is the only one telling her not to do this. And the only facts we have are that when the county did become aware of this, he was immediately gone. I'm not sure that helps you. He was immediately gone because I think it was a straw that broke the camel's back, but whatever. Thank you very much. Thank you. Good morning, Ernest. Good morning. My name is Jerry Heschweck, and I represent Thomas Yudlowsky in this matter. If I may, I'll briefly address first the issue of supplemental jurisdiction, since that applies directly to Mr. Yudlowsky. The standard of review for such a claim is abuse of discretion. Well, let me ask you this question. Sure. I presume you concede that if we send it back and say there's a genuine dispute that has to be resolved by the jury, that those claims come back into play. Yes. Okay. Yes. What this court's holdings have said that absent extraordinary circumstances, the district court must decline to retain jurisdiction when the original jurisdiction claim is dismissed. In less, of course, the pending claims raise considerations of judicial economy, convenience, and fairness. And the court, the district court, did address this issue and said there are no considerations of judicial economy, convenience, or fairness to the parties because the court wasn't presented with any such facts. The appellant argues that judicial economy weighed in favor of retaining jurisdiction and in support of that sets forth all these motions that took place to say, hey, the district court extended some effort in this. But 90% of the motions that are listed, even if that were something to consider, 90% of the motions that were listed were taken care of before the second amended complaint was filed. The only time, the only remaining claim against Mr. Yudlowsky is a state law civil assault claim, which was brought forth in the second amended complaint, which came after all of those motions. The second, and probably the better argument that they make, is that convenience supported the state law claim staying in the district court. And the only facts that they state to support that is that discovery had taken place in the district court, and so it would be more convenient to leave it there. But there's a case that's not in the materials, but it's called Inouye v. Paniker. It's at 200 F. 3rd, 189, and in that case they addressed that very issue. Is this a case that came out in the last week? No, it is not, Judge. And so how is it that we hear about this now? Well, I didn't know, I didn't think that this was such an issue until I started reading the materials again and saw that, you know, they had alluded to this discovery issue. I would have made the common sense argument that there's nothing that prevents them from using all the material that they gleaned from the discovery in the state court case anyway. I certainly wouldn't have any objection. We wouldn't want to re-depose people in the state court. But it turns out that's exactly what this court said in the Inouye case. They said, although this case has been pending in the district court for some time and the parties have taken discovery, the parties are able to use the information gleaned from discovery in the court proceedings. They went on to say, with respect to fairness, the dismissal of her present claims, they knowingly risked the dismissal of the pendant claims when they filed suit in the federal district court and invoked the discretionary jurisdiction rule. Also on the convenience issue, the plaintiff, the appellant, resides in Susquehanna County. If this were to go to state court, it would be in Susquehanna County. The appellant resides in Susquehanna County. Virtually all the witnesses, if not all the witnesses, reside in Susquehanna County. And the office where this is said to have occurred is about 50 yards from the courthouse. So it's all right in the same area. So the convenience would militate in favor of a state court action. I believe that the district court properly declined to retain jurisdiction of the case. I'll very briefly touch on the fairing of the alert defense. On the issue of reasonableness, the only facts that the appellant was relying on in support of her notion that they would get rid of her if there were complaints really arose out of a discussion that had absolutely nothing to do with complaining about sexual harassment. It had to do with her being in her office and not doing work when Sylvia Beamer came in or when the commissioners came in. And what she testified to was that Mr. Yudlowsky has told her, when they're around, you'd better do your work or they'll get rid of your position. They'll get rid of you. You'd better look busy, I think were his words. So there's no factual basis for anyone to determine that she should have been deterred about making a complaint. Well, that's up to the jury, isn't it? Well, there's no facts from which they can glean that. She said, he always made me fear Sylvia and the commissioners, this is going to be the end of my job. I'm sorry? She said, the way he always made me fear Sylvia and the commissioners, to me, this was going to be the end of my job. Don't you think that should be? Isn't that a fact that would be in evidence? That she felt that way? That's not a fact. That's her opinion that she felt that. But the jury can credit it and say it's unreasonable in the basis with that fact, if they believe that she did believe that and they said, notwithstanding that, that's unreasonable. I think it's totally unreasonable for her to believe that because what she's basing that on is this conversation that she had with Mr. Yudlowsky where he said she's basing that on this conversation where he said, you better look busy or they're going to get rid of you. This had to do with, if you're not doing work, they're going to think that they don't need you around here, is what that conversation was. It had absolutely nothing to do with reporting sexual harassment. In fact, they have never had any such conversation. So I don't think there's any factual dispute or any factual basis for a jury or anyone else to conclude that she should have been dissuaded from making a complaint. She chose not to make a complaint for over three years and, in fact, never made a complaint. If anything was spoken to him that he was doing anything wrong, he'd get very nasty. I also felt like I didn't want to step on any toes. I had to somehow get by the day, get through it without making things worse. Wouldn't you infer from that that if she refused his advances and went to and made a report, he would say bad things about her performance and get her fired? You wouldn't infer that? I was at all the depositions myself, and I don't ever remember that being an issue, that she based her belief solely on this conversation that she had that dealt with a totally separate topic. It dealt with the topic of you'd better do some work or they're not going to think they need you around here. The record that I read suggested that she had a lot of bills. She had a lot of bills. She had severe financial problems. She was in fear of losing her job. She would do apparently anything to keep her job, including stay silent. Shouldn't we credit that position? I mean in terms of why she remained silent. I don't know, Judge, what fact there would be, though, and I think it goes back to Judge Screenway's questions in the beginning. What facts are there from which a jury can conclude that? She's speculating that that would happen, but I don't know that it's even a rational speculation. You see what happened in the end. She said she complained and he was gone, and I know you say that's the straw that broke the camel's back. It could be. Jury might view it that way. Jury might view it differently. The other witnesses who testified, I don't think they took his actions as sexual harassment at all. They didn't think they should have been hugging in the workplace. That's a fair statement. The problem with the argument is that these various things that we're bringing up are facts from which inferences can be drawn, and if inferences can be drawn, the question is what conclusions can be made from them, and should it be in the hands of a jury rather than as a matter of law. Thank you so much. Thank you, Jeff. Thank you, Your Honor. On rebuttal, I reserve three minutes. Just four points. The issue is that these facts should be evaluated in determining whether the failure to report was reasonable, and you have here, if they weren't the lawyers for the defendants, at least two potential jurors who think that it was unreasonable for her not to report it. But my point is that when you consider all the facts, and there's more facts than the representations made, let me just read an excerpt that touches on Your Honor's point about the policy. The question to Ms. Minarski at deposition, once stuff started to happen, did you read it? Did you go back and take interest in what the policy was on harassment? Answer, not immediately. Shortly after he started doing this, there came a time when I was standing in the doorway filing something. He came up behind me and hugged me. He did the usual, you know, pulled me back up against him. At that point, the secretary from across the hallway walked by the door and seen him doing this. She stepped in and said, I thought you said yesterday you're not supposed to do that anymore. He looked with a blank look on his face like he didn't know what to say. For several minutes, he didn't say anything. He didn't say nothing. Then he said, well, that's over there. Over here, I can do whatever I want. Meaning the county courthouse, he could not. But in the county office building, he can do whatever he wanted. This is the last sentence of her testimony that I'm reading to you, and I want to emphasize it. Quote, I went from thinking that someone spoke up, great, I won't have to, to thinking, oh, someone spoke up, and it went nowhere. So now what do I do? These are questions for a jury to determine. I'm not saying that ultimately I'm going to prevail at trial, although I'll give it my best shot for my client. But a judge shouldn't rob Ms. Minarski of the chance. There's a mischaracterization of the testimony that he told her not to trust Beamer or the commissioners. They're characterizing that testimony about the threat to the job. The second point is counsel for the county brought up that there was no evidence that anyone knew about the harassment to Minarski until she sent the email in July. That's not the point. The point is that almost everyone knew, especially Beamer and Warren, about the harassment, the harasser's harassment. That's the scope of the inquiry. There's a lot of evidence that everyone knew what Yudlowski was doing because he was doing it to the higher-ups who were in charge of enforcing the policy. Just briefly on two other points. I think I'd like the court to take notice of the timing of this decision by Judge Carlson that I'm appealing. It was issued in March of 2017. I think a lot has happened since then, and I think the law to date has been unjustly onerous on what justifications a victim of harassment, what fears of reporting had to show, and has been too accepting of these policies that say they're tolerant, but really are not and are not effective. I'd like that to change today with the decision in the right direction saying that Ms. Minarski has the right to go to trial on these issues. And the last point to go full circle, Your Honor. I did submit a supplemental brief because all the cases that I found on the issue that I wanted to present to the court, I presented in my initial brief, and I didn't think that the court was inviting us to re-argue the point. Thank you. Fair enough. Thank you all. We'll allow you to take your case.